UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| Tano Bogle, | § § § § | |
| *Plaintiffs,* | § § | CASE NO.: 0:22-cv-60171-RS |
| v. | § § | |
| Rausch Sturm LLP, Cascade Capital LLC, and John Doe, | § § § | |
| *Defendants.* | § | |

**DEFENDANTS'**
**MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY CASE**

TO THE HONORABLE JUDGE OF SAID COURT:

Come now, Defendants Cascade Capital LLC ("Cascade") and Rausch Sturm, LLP "Rausch") (collectively "Defendants"), and file this Motion to Compel Arbitration and Dismiss or Stay Case, and will show unto this Court as follows:

**INTRODUCTION**

1. Plaintiff filed this class action lawsuit against Defendants and a John Doe on January 24, 2022, for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and for state law claims of money had and received and violations of the Florida RICO Act, Fla. Stat. § 772.103(1). Doc. 1. Plaintiff's claims stem from allegations that Rausch, acting on behalf of Cascade as its attorneys, acted improperly when attempting to collect a debt from Plaintiff that was owed to Cascade. *Id.* at 2-6. Plaintiff further avers that Rausch worked with the unidentified John Doe to unlawfully obtain Plaintiff's banking information. *Id.*

2. The debt at issue in this case stems from a Retail Installment Contract (the "Contract") originally entered into between Plaintiff Tino Bogle ("Plaintiff") and CarMax Auto

Superstores, Inc ("CarMax"). <u>Exhibit A</u>; <u>Exhibit B</u>; *see* <u>Doc. 1</u> ¶¶ 9-11. This Contract was entered into for the purchase of an automobile. <u>Exhibit B</u>. Page three (3) of the Contract contains a binding arbitration clause, which stated that Plaintiff and CarMax agreed to arbitration of any dispute that "in any way arises from or relates to this [Contract]." *Id*. at 3. This includes disputes based on "contract, tort, consumer rights, fraud and other intentional torts" as well as disputes based "on laws, regulations, ordinances or similar provisions." *Id*. Further, the contract stated that Plaitiff "[gave] up [their] right to participate in a class action." *Id*.

3.  When Plaintiff entered into the Contract, the Contract was immediately assigned to Santander Consumer USA, Inc. ("Santander"). *Id*. at 4. On June 9, 2015, Cascade purchased the debt from Santander. <u>Exhibit A</u> ¶ 8. As part of the purchase, Cascade was assigned all rights and obligations under the contract, including the arbitration clause. *Id*. ¶¶ 8-13. Thus, a binding arbitration agreement exists between Plaintiff and Cascade, pursuant to the terms of the Contract. <u>Exhibit A</u>; <u>Exhibit B</u>. Pursuant to that agreement, Plaintiff's claims are subject to binding arbitration, solely on an individual basis, and this Court should either stay or dismiss all class action claims alleged against Defendants and compel the parties to arbitration.[1]

**ARGUMENTS AND AUTHORITIES**

    **A.**    **Standard of Law.**

4.  The Federal Arbitration Act ("FAA") embodies "national policy favoring arbitration," *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). The FAA allows an action

---

[1] Pursuant to the Contract, Defendants provided written notice of the intent to require arbitration under the terms of the Contract to Plaintiff, care of Plaintiff's counsel, via email.

to compel arbitration "under a written agreement for arbitration." 9 U.S.C. § 4. A district court must compel arbitration if there is a valid agreement to do so. *Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1331 (11th Cir. 2005); *Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 854 (11th Cir. 1992) (citing 9 U.S.C. §§ 2 & 3.) "Federal policy requires [courts] to construe arbitration clauses generously, resolving all doubts in favor of arbitration." *Becker v. Davis*, 491 F.3d 1292, 1305 (11th Cir. 2007), *abrogated on other grounds by Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009); *see Picard v. Credit Solutions, Inc.*, 564 F.3d 1249, 1253 (11th Cir. 2009) ("The FAA creates a strong federal policy in favor of arbitration."). "The FAA reflects the fundamental principle that arbitration is a matter of contract" and "places arbitration agreements on an equal footing with other contracts." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63 (2010). In construing arbitration agreements, courts apply state-law principles relating to contract formation, interpretation, and enforceability. *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005) ("[I]n determining whether a binding agreement arose between the parties, courts apply the contract law of the particular state that governs the formation of contracts.").

5. "Under both federal and Florida law, there are three factors for the court to consider in determining a party's right to arbitrate: (1) a written agreement exists between the parties containing an arbitration clause; (2) an arbitrable issue exists; and (3) the right to arbitration has not been waived." *Curbelo v. Autonation Benefits Co., Inc.,* Case No.: 14-CIV-62736, 2015 U.S Dist. LEXIS 18788, 2015 WL 667655, *2 (S.D. Fla. Feb. 17, 2015) (internal citations and quotation marks omitted); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). We must make this determination "by applying the 'federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [FAA].'" *Id*.

(citation omitted). This inquiry must be undertaken against the background of a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ("Questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."). Under this policy, it is the role of courts to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). Because arbitration is a matter of contract, however, the FAA's strong pro-arbitration policy only applies to disputes that the parties have agreed to arbitrate. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995). In the absence of an agreement to arbitrate, a court cannot compel the parties to settle their dispute in an arbitral forum. *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986) (citation omitted); *Volt Info. Sci., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989) ("Arbitration under the [FAA] is a matter of consent, not coercion . . . .").

6. Motions to compel arbitration are reviewed under the standard for summary judgment. *Johnson v. KeyBank Nat'l Assoc.*, 754 F.3d 1290, 1294 (11th Cir. 2014) (describing an order compelling arbitration as "summary-judgment-like" because it is "'a summary disposition of the issue of whether or not there has been a meeting of the minds on the agreement to arbitrate'" (quoting *Magnolia Capital Advisors. Inc. v. Bear Stearns & Co.*, 272 F. App'x 782, 785-86 (11th Cir. 2008))). Thus, a court can consider information outside the pleadings for purposes of resolving the motion. The party seeking to compel arbitration has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence, just as a party relying upon a contract has the burden of proving its existence and its terms under state law. *See, e.g., Grant v. Houser*, 469 Fed. App'x 310, 315 (5th Cir. 2012); *Gentry v. Beverly Enters.-Ga., Inc.*, 714 F. Supp. 2d 1225, 1229 (S.D. Ga. 2009).

  **B.** **A contract containing an arbitration clause exists between the Plaintiff and Cascade, and therefore this Court should compel Plaintiff to arbitrate his claims.**

7. The first factor in determining the propriety of a motion to compel arbitration is to determine whether the parties agreed to arbitrate in a written contract. *Curbelo*, 2015 WL 667655, at *2. Plaintiff entered into a contract with CarMax for the purchase of an automobile. Exhibit A ¶ 6; Exhibit B. The Contract contained an arbitration agreement which stated that "By signing this Contract. you and we agree to be bound by the terms of this Arbitration Provision." Exhibit B at 3. The terms "you" and "we" are defined at the beginning of the Contract as:

> In this Contract the words "you" and "your" mean anyone signing this Contract as a Buyer or Co-Buyer. The words "we", "us", and "our" mean the Seller or anyone to whom the Seller transfers its rights under this Contract.

*Id.* at 1. The scope of the arbitration agreement is defined as:

> **What Claims are Covered**. A "Claim" is any claim, dispute or controversy between you and us that in any way arises from or relates to this consumer credit sale, the purchase you are financing by way of this Contract, or the Vehicle and related goods, services, and optional contracts that are the subject of the purchase and this Contract, and includes:
>  • Initial claims. counterclaims, cross-claims and third-party claims;
>  • Disputes based on contract, tort, consumer rights, fraud and other intentional torts (at law or in equity, including any claim for injunctive or declaratory relief;
>  • Disputes based on constitutional grounds or on laws, regulations, ordinances or similar provisions; and
>  • Disputes about the validity, enforceability, arbitrability or scope of this Arbitration Provision or this Contract

*Id.* at 3. Thus, the arbitration clause covers plaintiff's claims in this matter, as the clause covers any disputes raised pursuant to torts, consumer rights, intentional torts, and claims brought up statutes such as the FDCPA. *See FusionStorm, Inc. v. Presidio Networked Sols., Inc.*, 871 F. Supp. 2d 1345, 1354 (M.D. Fla. 2012) ("Furthermore, where, as here, the arbitration

provisions are extremely broad and written in the most general terms to encompass all disputes, controversies, or claims, the agreement to arbitrate should be construed as broadly as intended."); *see also Paramount Disaster Recovery LLC v. Amica Mut. Ins. Co.,* No. 2:16-CV-14566, 2017 U.S. Dist. LEXIS 216839, at *7 (S.D. Fla. Dec. 6, 2017) ("Where a contract is unambiguous, however, it should be enforced as read, giving its terms their plain and ordinary meaning.") (citing *Leisure Resorts, Inc. v. City of W. Palm Beach*, 864 So. 2d 1163, 1166 (Fla. Dist. Ct. App. 2003)).

8.  This debt was created as a result of Plaintiff entering into the Contract and then failing to pay the amounts required under the Contract. After Plaintiff entered into the Contract with CarMax, CarMax assigned its rights and interests in the Contract to Santander. Exhibit A ¶ 6; Exhibit B at 4. On June 9, 2015, Cascade purchased the debt and all associated legal and equitable interest from Santander. Exhibit A ¶¶ 8-13. Cascade's ownership of the debt was been judicially established via a judgment entered against Plaintiff by Judge Betsy Benson in the County Court in and for Broward County, Florida, Case No COCE-16-021327. Exhibit A ¶¶ 11-12; Exhibit D. When Cascade purchased the debt, the Contract, including all rights and obligations under contract, was assigned to Cascade as well. Pursuant to this assignment, Cascade obtained all rights and obligations under the contract, and stepped into the shoes of the original signatory to the contract. *See SFR Servs. LLC v. GeoVera Specialty Ins. Co.,* No. 2:19-cv-466-JLB-MRM, 2021 U.S. Dist. LEXIS 90546, at *7 (M.D. Fla. May 12, 2021) ("If an assignment is valid, the assignee 'stands in [the] shoes' of the assignor and 'has the same rights and status' that the assignor did.") (quoting *Pro. Consulting Servs., Inc. v. Hartford Life & Accident Ins. Co.*, 849 So. 2d 446, 447 (Fla. 2d DCA 2003)). Nothing in the contract prohibited the assignment of the debt and the underlying rights and obligations under the Contract. *See L.V.*

*McClendon Kennels, Inc. v. Inv. Corp. of S. Fla.*, 490 So. 2d 1374, 1375 (Fla. Dist. Ct. App. 1986) ("Generally, all contractual rights are assignable unless the contract prohibits assignment, the contract involves obligations of a personal nature, or public policy dictates against assignment.").

9. In sum, there was a Contract between Plaintiff and CarMax which required Plaintiff and CarMax to arbitrate disputes covered by the Contract, including claims brought as torts, consumer rights, or statutory violation. Exhibit B at 3. Cascade purchased the debt and was assigned the contract governing the debt, including the arbitration clause. Exhibit A ¶¶ 8-10, 14-17. Nothing in the contract prohibited the assignment. Exhibit A ¶ 17; Exhibit B. As such, the Contract now applies to Plaintiff and Cascade, and requires this dispute to be subject to arbitration.

10. The second factor is also satisfied because an arbitrable claim exists between Plaintiff and Cascade. The arbitration provision convers torts, intentional violations, and statutory violations, which covers the claim alleged by Plaintiff against the Defendants in this matter. Exhibit B at 3. The arbitration provision covers disputes concerning "consumer rights," which encompasses the claims brought by Plaintiff. *Id*. Further, none of Plaintiff's claims contain any provisions or exceptions that prohibit them from being arbitrated. Last, arbitration of claims involving consumer protection statutes is common. *See, e.g., Vanwechel v. Regions Bank*, No. 8:17-CV-738-T-23AAS, 2017 U.S. Dist. LEXIS 67127, 2017 WL 1683665, at *1 (M.D. Fla. May 3, 2017) ("Because the Vanwechels' TCPA, FCCPA, and FDCPA claims 'relate' directly to the collection of money owed under the agreement (the defendants allegedly violated the TCPA, FCCPA, and FDCPA while attempting to collect the debt owed to Regions), the agreement requires the arbitration of the Vanwechels' claims."). All of

Plaintiff's claims are covered by the arbitration provisions, and nothing prohibits in state or federal law prohibits this Court from compelling arbitration in this matter. Therefore, arbitration is appropriate in this matter.

11. The third factor is satisfied because there is no evidence that Plaintiff ever waived the arbitration provision or complied with the requirements of the Contract to get out of arbitration. There is nothing prohibiting assignment of the contract, and because Cascade provided irrefutable evidence of the assignment taking place, then there exists a contract between Plaintiff and Cascade. The Contract at issue contains a binding arbitration clause which requires the Party to arbitrate claims between the Parties. This satisfies the third factor of the analysis. Nothing prohibits this Court from compelling arbitration, and all of the factors of the analysis are satisfied. As such, this Court should compel the Parties to arbitrate in this matter.

      **B.**    **The Court should enforce the Class Action Waiver and dismiss the class claims.**

12. Plaintiff has brought this action as a proposed class action. Plaintiff seeks to represent four different classes in this case. Doc. 1 at 5-6. However, the arbitration clause in the Contract, which exists and is enforceable between Plaintiff and Cascade, contain a Class Action Waiver clause as well, which stated:

> **Class Action Waiver. You give up your right to participate in a class action. This means that you may not be a representative or member of any class of claimants or act as a private attorney general in court or in arbitration with respect to any Claim.** Notwithstanding any other part of this Arbitration Provision, the validity and effect of the Class Action Waiver must be determined only by a court and not by an arbitrator. If a court limits or voids the Class Action Waiver, then this entire Arbitration Provision (except for this paragraph) will be null and void.

Exhibit B at 4 (emphasis in original). When Cascade purchased the debt from Santander, these rights and obligations imposing the class action waiver was transferred as well, and Cascade has the legal right to enforce this class action waiver in this instant matter.

13.   The Supreme Court has determined that a class action waiver in an arbitration agreement is enforceable under the FAA. *American Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2312, 186 L. Ed. 2d 417 (2013); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011). The Eleventh Circuit has found that the FAA overrules state laws prohibiting class action waivers, in line with the Supreme Court's opinion in *Concepcion*. *Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1215 (11th Cir. 2011) ("In light of *Concepcion*, our resolution of this case does not depend on a construction of Florida law. To the extent that Florida law would require the availability of classwide arbitration procedures in this case -- in spite of the parties' agreement to submit all disputes to arbitration "on an individual basis" only -- simply because the case involves numerous small-dollar claims by consumers against a corporation, many of which will not be brought unless the Plaintiffs proceed as a class, such a state rule is inconsistent with and thus preempted by FAA § 2"); *Pendergast v. Sprint Nextel Corp.*, 691 F.3d 1224, 1233 (11th Cir. 2012) ("This Court affirmed, concluding that we did not need to decide whether Florida law would invalidate the class action waiver because even if it did, the law would be preempted by the FAA, per *Concepcion*."); *see also Jenkins v. First Am. Cash Advance of Ga., LLC,* 400 F.3d 868, 877-78 (11th Cir. 2005) ("arbitration agreements precluding class action relief are valid and enforceable."); *Randolph v. Green Tree Fin. Corp.-Ala.*, 244 F.3d 814, 819 (11th Cir. 2001) (holding "a contractual provision to arbitrate TILA claims is enforceable even if it precludes a plaintiff from utilizing class action procedures in vindicating statutory rights under TILA").

14. Courts have similarly upheld class action waivers found in agreements governing debts that are subject to claims brought under the FDCPA. *Dooley v. Federated Law Grp., PLLC*, No. 1:16-cv-04703-SCJ-CMS, 2018 U.S. Dist. LEXIS 61086, at *42 (N.D. Ga. Jan. 22, 2018), *report and recommendation adopted*, *Dooley v. Federated Law Grp., PLLC*, No. 1:16-CV-4703-SCJ, 2018 U.S. Dist. LEXIS 61081 (N.D. Ga. Feb. 12, 2018) ("Given my conclusion that Plaintiff's individual claims against Defendants fall within the scope of the Arbitration Provision at issue in this case, that Defendants are entitled to enforce that provision, and that the Eleventh Circuit has held that arbitration agreements precluding class action relief are valid and enforceable, I recommend that this Court enforce the type of arbitration to which Plaintiff agreed, which does not include arbitration on a class basis, or the right to bring a claim as a class action in court."); *Cronin v. Portfolio Recovery Assocs., Ltd. Liab. Co.*, No. 8:15-cv-00768-EAK-EAJ, 2016 U.S. Dist. LEXIS 57541, at *7 (M.D. Fla. Apr. 29, 2016) ("As discussed above, the Court finds that PRA did receive an assignment of Plaintiff's account, and for the same reason that PRA is entitled to enforce the Arbitration Agreement it is likewise entitled to enforce the Class Action Waiver.").

15. As shown in the previous section, there is a valid and enforceable Contract between Plaintiff and Cascade, and the Contract contains a valid and enforceable arbitration clause. This arbitration clause likewise contains a valid and enforceable class action waiver. This Court should enforce the terms in accordance with the Contract, compel arbitration on all claims, and dismiss Plaintiff's class action claims.

    C.    **All Parties should be compelled to arbitration.**

16. The previous sections of this Motion establish a Contract between Plaintiff and Cascade, and compelling arbitration is appropriate. In addition to this, the Court should

compel all parties to this matter—Plaintiff, Cascade, and Rausch—to arbitration, in order to advance the purpose of the FAA and to ensure a uniform and consistent adjudication of this matter.

17. "Despite the general rule respecting the requirement of an agreement to arbitrate before such can be compelled, 'federal courts have held that so long as there is *some* written agreement to arbitrate, a third party may be bound to submit to arbitration.'" *Kakawi Yachting, Inc. v. Marlow Marine Sales, Inc.*, No. 8:13-cv-1408-T-TBM, 2014 U.S. Dist. LEXIS 196777, at *10 (M.D. Fla. Oct. 3, 2014) (quoting *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 355 (5th Cir. 2003)) (emphasis in original). Federal courts and state courts in Florida have recognized that a nonsignatory to an arbitration agreement can be compelled to arbitrate, or compel arbitration, under the theories of third-party beneficiary and collateral estoppel. *Id.*; *see Lawson v. Life of the South Ins. Co.,* 648 F.3d 1166 (11th Cir. 2011). Courts have also enforced clauses where there is a close relationship between the nonsignatory and signatory and the interests of the nonsignatory are derivative of the interests of the signatory. *East Coast Karate Studios, Inc. v. Lifestyle Martial Arts, LLC*, 65 So. 3d 1127, 1129 (Fla. Dist. Ct. App. 2011) (collecting cases); *Kakawi Yachting, Inc.*, 2014 U.S. Dist. LEXIS 196777, at *14 (compelling arbitration due to, in part, "the relatedness of the parties"). "Application of equitable estoppel is warranted . . . when the signatory [to the contract containing the arbitration clause] raises allegations of . . . substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999). "Otherwise, 'the arbitration proceedings [between the two signatories] would be rendered meaningless and the federal policy in favor

of arbitration effectively thwarted.'" *MS Dealer Serv. Corp*, 177 F.3d at 947 (quoting *Sam Reisfeld & Son Import Co. v. S.A. Eteco*, 530 F.2d 679, 681 (5th Cir.1976)).

18. Cascade and Rausch are completely intertwined in the allegations in the Complaint. Plaintiff alleges that Rausch works with and for Cascade to engage in prohibited and unlawful activity. *See* Doc. 1. The complaint alleges causes of action, such as the money had and received and the RICO claims, based on Rausch and Cascade allegedly working together. *Id.* The Complaint alleges "substantially interdependent and concerted misconduct" by Cascade and Rausch sufficient to find that the arbitration clause in the Contract applies to Rausch in this matter as well. *Id.*; *MS Dealer Serv. Corp*, 177 F.3d at 947.

19. Likewise, compelling arbitration between only Plaintiff and Cascade would be impractical and could potentially lead to conflicting results. It would result in two separate matters, one in arbitration and one in federal court, with different procedures and different deadlines, which concern the identical and overlapping allegations. This could potentially lead to inconsistent results and could potentially prejudice one of the parties to this action. Further, discovery in this matter will likely concern the roles played by each defendant and will likely concern the relationship between Cascade and Rausch. Therefore, the purpose of the FAA, favoring resolution through arbitration and interest of justice in a fair and consistent adjudication of this matter, warrants compelling all of the parties to this action to arbitration.

    **D. This Court should either dismiss or stay this action pending the arbitration.**

20. Defendants have established that there is a binding Contract between Plaintiff and Cascade, and the Contract contains a valid and enforceable arbitration clause. Therefore, compelling arbitration is proper. In addition to compelling arbitration, this Court should either dismiss or stay this instant matter pending the outcome of the arbitration. *FusionStorm,*

*Inc. v. Presidio Networked Sols., Inc.*, 871 F. Supp. 2d 1345, 1357 (M.D. Fla. 2012) ("When a court finds that parties have agreed to arbitrate a dispute, Section 3 of the FAA provides for a mandatory stay of the trial of an action until arbitration has been had in accordance with the terms of the arbitration agreement.") (citing 9 U.S.C. § 3). As all Parties to this action should be compelled to arbitration on all of their claims against any party, this matter should either be dismissed or stayed pending the resolution of arbitration of Plaintiff's claims against the Defendants. *See Parsons v. Advanced Call Ctr. Techs.,* No. 17-14436-CIV-MARRA/MAYNARD, 2018 U.S. Dist. LEXIS 243457, at *14 (S.D. Fla. May 25, 2018) (granting motion to compel arbitration and staying case until arbitration is completed); *see also Fialek v. I.C. Sys.*, No. 3:18-cv-136-J-39MCR, 2019 U.S. Dist. LEXIS 39770, at *7 (M.D. Fla. Jan. 24, 2019) ("In this District, motions to compel arbitration are treated generally as motions to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).") (internal quotations omitted). To this end, the Defendants requests this Court either dismiss or stay this action, as best suits the Court, and compel the Parties to arbitration.

## CONCLUSION

21. A valid, binding Contract with a valid, binding arbitration provision exists between Plaintiff and Cascade. The arbitration provision covers all of the claims brought by Plaintiff in this action, and the Parties should be compelled to arbitrate this matter. Further, Plaintiff expressly waived his rights to pursue class action claims, and therefore the class action claims raised in Plaintiff's Complaint should be dismissed. For these reasons, Defendants respectfully request that this Court grant this Motion to Compel Arbitration.

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully request that this Court this Court compel the Parties to arbitration and stay all pending matters in this Court until the completion of arbitration.

### CERTIFICATE OF GOOD FAITH CONFERRAL

Defendant hereby avers that it conferred with Plaintiff concerning the relief sought in this motion, and has been advised that Plaintiff objects to the relief requested herein.

| | |
|---|---|
| Dated: April 7, 2022 | Respectfully submitted, |
| HARTNETT LAW P.A. | **GOLDEN SCAZ GAGAIN, PLLC** |
| */s/ David P. Hartnett*<br>David P. Hartnett<br>Florida Bar No. 946631<br>8900 S.W. 107th Avenue<br>Suite 301<br>Miami, FL 33176<br>Phone: 305 598-2000<br>Fax: 305-675-6171<br>Email: dhartnett@thehartnettfirm.com<br>Attorneys for Defendant RAUSCH STURM LLP | /S/ Charles J. McHale<br>DALE T. GOLDEN, ESQ.<br>FLORIDA BAR NO.: 0094080<br>CHARLES J. MCHALE, ESQ.<br>FLORIDA BAR NO.: 0026555<br>**GOLDEN SCAZ GAGAIN, PLLC**<br>1135 MARBELLA PLAZA DRIVE<br>TAMPA, FLORIDA 33619<br>PHONE: (813) 251-5500<br>FAX: (813) 251-3675<br>DGOLDEN@GSGFIRM.COM<br>CMCHALE@GSGFIRM.COM<br>***COUNSEL FOR DEFENDANT CASCADE CAPITAL, LLC*** |